IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SIDNEY JAMES CLAYTON (AIS# 224797) | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| V. | * | Case No.: 2:06-CV-367-ID |
| | * | |
| J.C. GILES | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

**SPECIAL REPORT OF DEFENDANTS SAMUEL RAYAPATI, M.D., NETTIE BURKS, R.N., AND PRISON HEALTH SERVICES, INC.**

COME NOW the Defendants, Prison Health Services, Inc. (identified in the Plaintiff's Amended Complaint as "P.H.S.") (hereinafter "PHS"), Samuel Rayapati, M.D. (identified incorrectly in Plaintiff's Amended Complaint as Dr. Reapotie") and Nettie Burks, R.N. (identified incorrectly in Plaintiff's Amended Complaint as "Nurse Burts"), and in response to this Honorable Court's Order present the following Special Report with regard to this matter:

**I. INTRODUCTION**

The Plaintiff, Sidney James Clayton (AIS# 224797) is an inmate currently confined at Red Eagle Honor Farm located in Montgomery, Alabama. On May 10, 2006, Mr. Clayton amended his Complaint in this matter to allege that Defendants PHS, the company that currently contracts with the Alabama Department of Corrections to provide healthcare to inmates within the State of Alabama; Samuel Rayapati, M.D., Ventress's former Medical Director; and Nettie Burks, R.N., H.S.A., Ventress's Health Services

Administrator, failed to provide him with appropriate medical care by failing to transfer him from Ventress to a correctional facility where he would not be exposed to secondhand smoke. (See Amended Complaint). Mr. Clayton also claims that these Defendants have failed to properly maintain Ventress' sprinkler system. (Id.) Aside from these allegations, the Plaintiff does not claim that the Defendants failed to provide him with appropriate treatment for any medical condition. (Id.) The Plaintiff claims $250,000.00 in damages. (Id.)

As directed, the Defendants have undertaken a review of Plaintiff Clayton's claims to determine the facts and circumstances relevant thereto. At this time, the Defendants are submitting this Special Report, which is supported by the Affidavit testimony of Nettie Burks, R.N., H.S.A. (attached hereto as Exhibits "A" and "B"), and a certified copy of this inmate's medical records (attached hereto as Exhibit "C"). These evidentiary materials demonstrate that the Defendants do not control the manner in which inmates are transferred within the Alabama Department of Corrections nor do they control the manner in which the sprinkler system at Ventress Correctional Facility is maintained. (See Exhibit "A"). Moreover, these evidentiary materials demonstrate that Plaintiff Clayton has been provided appropriate medical treatment at all times, and that the allegations in his Complaint are without merit.

## II. NARRATIVE SUMMARY OF FACTS

Sidney James Clayton (AIS# 224797) is an inmate who was incarcerated at Ventress Correctional Facility from December 2002 through April 2006. (See Exhibit "A"). Mr. Clayton has made an allegation in this matter that Dr. Rayapati, PHS and Nurse Burks have failed to provide him with appropriate medical treatment while he was

2

incarcerated at Ventress Correctional Facility by failing to transfer him to another correctional facility where he would not be exposed to second hand smoke. (See Amended Complaint, Id.). Mr. Clayton also contends that Ventress is not equipped with appropriate sprinkler systems. (Id.)

PHS, Dr. Rayapati and Nurse Burks do not control the manner in which the Alabama Department of Corrections confines inmates. (Id.) They do not have the ability to transfer inmates from one correctional facility to another. (Id.) Moreover, they have no control over the manner in which the Alabama Department of Corrections maintains Ventress's sprinkler systems. (Id.) As such, the Defendants are not responsible for those claims raised in the Plaintiff's Complaint as amended.

Nurse Burks has testified that all of Mr. Clayton's medical conditions and complaints have been evaluated and treated in a timely and appropriate fashion. (See Exhibit "A"). Mr. Clayton has been seen and evaluated by the medical or nursing staff, and has been referred to an appropriate care provider and given appropriate care, each time he has registered any health complaints at Ventress Correctional Facility. (Id.)

At all times, PHS, Dr. Rayapati and Nurse Burks have exercised the same degree of care, skill, and diligence as other similarly situated health care providers would have exercised under the same or similar circumstances. (Id.) In other words, the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. (Id.)

At no time has PHS, Dr. Rayapati or Nurse Burks denied Mr. Clayton any needed medical treatment, nor have they ever acted with deliberate indifference to any serious

medical need of Mr. Clayton. (Id.) At all times, Mr. Clayton's medical complaints and conditions have been addressed as promptly as possible under the circumstances. (Id.)

### III. DEFENSES

The Defendants assert the following defenses to the Plaintiff's claims:

1. The Defendants deny each and every material allegation contained in the Plaintiff's Amended Complaint and demand strict proof thereof.

2. The Defendants plead not guilty to the charges in the Plaintiff's Amended Complaint.

3. The Plaintiff's Amended Complaint fails to state a claim against the Defendants for which relief can be granted.

4. The Defendants affirmatively deny any and all alleged claims by the Plaintiff.

5. The Plaintiff is not entitled to any relief requested in the Amended Complaint.

6. The Defendants plead the defense of qualified immunity and avers that the actions taken by the Defendants were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

7. The Defendants are entitled to qualified immunity and it is clear from the face of the Amended Complaint that the Plaintiff has not alleged specific facts indicating that the Defendants have violated any clearly established constitutional right.

8. The Defendants cannot be held liable on the basis of respondeat superior, agency, or vicarious liability theories.

9. The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

10. The allegations contained in the Plaintiff's Amended Complaint against the Defendants sued in their individual capacities, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

11. The Defendants plead all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

12. The Defendants aver that they were at all times acting under color of state law and, therefore, it is entitled to substantive immunity under the law of the State of Alabama.

13. The Defendants plead the general issue.

14. This Court lacks subject matter jurisdiction due to the fact that even if the Plaintiff's allegations should be proven, the allegations against the Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

15. The Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

16. Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

17. The Defendants plead the defense that at all times in treating Plaintiff they exercised the same degree of care, skill, and diligence as other physicians and nursing staff would have exercised under similar circumstances and that at no time did they act toward the Plaintiff with deliberate indifference to a serious medical need.

18.  The Defendants plead the affirmative defense that the Plaintiff's Amended Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render it liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

19.  The Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

20.  The Defendants plead the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

21.  The Defendants plead the affirmative defense that they are not responsible for the policies and procedures of the Alabama Department of Corrections.

22.  The Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

23.  The Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against them and that any such award would violate the United States Constitution.

24.  The Defendants adopt and assert all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

25.  The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a). The Plaintiff has failed to pursue the administrative remedies available to him. See Cruz v. Jordan, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning Defendant's deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

26. The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of Plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from the Defendants who are entitled to immunity.

27. The Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e).

28. The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

29. Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

30. The Defendants assert that the Plaintiff's Amended Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and requests this Court pursuant to 42 U.S.C. § 1988 to award these Defendants reasonable attorney's fees and costs incurred in the defense of this case.

31. The Plaintiff's claims are moot because the events which underlie the controversy have been resolved. See Marie v. Nickels, 70 F., Supp. 2d 1252 (D. Kan. 1999).

## IV. ARGUMENT

**A.   The Plaintiff has failed to prove that the Defendants acted with deliberative indifference to any serious medical need.**

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (citing, Hishon v. King & Spalding, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 2d 1345, 1358 (M.D. Ala., 1999). Evidence now before the Court demonstrates that the Defendants have no control over the manner in which the Alabama Department of Corrections chooses to house its inmates. (See Exhibit "A"). They do not have the ability to transfer inmates from one correctional facility to another, and, further, have no control over the manner in which the Alabama Department of Corrections maintains the Ventress's sprinkler system. (Id.) Moreover, a careful review of Clayton's medical records reveals that Clayton has been given appropriate medical treatment at all times. (See Exhibit "C"). All of the allegations contained within Clayton's Complaint are either inconsistent with his medical records, or are claims for which no relief may be granted. (Id.) Therefore, Clayton's claims against the Defendants are due to be dismissed.

In order to state a cognizable claim under the Eighth Amendment, Clayton must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, Clayton must allege and prove that

he suffered from a serious medical need, that the Defendants were deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001) and Palermo, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." Id. (citations omitted).

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See Estelle, 429 U.S. at 106, McElligott, 182 F.3d at 1254, Hill, 40 F.3d 1176, 1186 (11th Cir. 1994), Palermo, 148 F. Supp. 2d at 1342. Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, 429 U.S. at 106-108.

The Defendants may only be liable if they had knowledge of Clayton's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. Estelle, 429 U.S. at 104-105. Obviously, Clayton cannot carry his burden. The evidence submitted with this Special Report clearly shows that the Defendants did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed.

The Defendants are, further, entitled to qualified immunity from all claims asserted by Clayton in this action. There is no argument that the Defendants were not acting within the scope of their discretionary authority. See Eubanks v. Gerwen, 40 F. 3d 1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994). Because the Defendants have demonstrated that they were acting within the scope of their discretionary authority, the burden shifts to Clayton to show that the Defendants violated clearly established law based upon objective standards. Eubanks, 40 F. 3d at 1160. The Eleventh Circuit requires that before the Defendants' actions can be said to have violated clearly established constitutional rights, Clayton must show that the right allegedly violated was clearly established in a fact-specific, particularized sense. Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual. See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)). The question that must be asked is whether the state of the law in 2006 gave the Defendants fair warning that their alleged treatment of Clayton was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

Therefore, to defeat summary judgment, Clayton must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the

Defendants to the fact that their practice or policy violates his constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11th Cir. 1994).

The Defendants submit that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that their alleged actions violated Clayton's constitutional rights. All of Clayton's medical needs have been addressed or treated. (See Exhibits "A" and "C"). The Defendants have provided Clayton with appropriate medical care at all times. (Id.)

A.  **The Plaintiff failed to exhaust his administrative remedies prior to filing suit in violation of the Prison Litigation Reform Act (PLRA).**

Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e et seq., in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts. See, e.g., Alexander v. Hawk, 159 F.3d 1321, 1324-1325 (CA11 1998) (citing statistics).[1] The PLRA was enacted in attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus, to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Nussle, 534 U.S., at 525, 122 S. Ct. 983,

---

[1] The PLRA contains a variety of provisions designed to bring inmate litigation under control. See, e.g., § 1997e(c) (requiring district courts to weed out prisoner claims that clearly lack merit); § 1997e(e) (prohibiting claims for emotional injury without prior showing of physical injury); § 1997e(d) (restricting attorney's fees).

11

152 L. Ed. 2d 12. See also Booth, 532 U.S., at 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958. The PLRA was also designed to "reduce the quantity and improve the quality of prisoner suits." Nussle, supra, at 524, 122 S. Ct. 983, 152 L. Ed. 2d 12.

A centerpiece of the PLRA's effort "to reduce the quantity . . . of prisoner suits" is an "invigorated" exhaustion provision. See § 1997e(a), and Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).[2] Specifically, the PLRA provides that prisoners may not file suit in Federal court for complaints regarding prison conditions unless they have first fully extinguished all administrative remedies available. Specifically,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e (a) (2000 ed.) (emphasis added).

Id. Courts have determined that under the PLRA, exhaustion of administrative remedies is no longer left to the discretion of the district court, but is mandatory. See Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) (emphasis added). 42 USC § 1997e states:

> (c) Dismissal
> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

---

[2] Requiring proper exhaustion gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." Preiser v. Rodriguez, 411 U.S. 475, 491-492, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).

Id. (emphasis added).

In order to avoid dismissal, prisoners must exhaust all "available" remedies, not just those that meet federal standards. Moreover, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. See Nussle, supra, at 524, 122 S. Ct. 983, 152 L. Ed. 2d 12. See Pozo v. McCaughtry, 286 F.3d 1022, 1025 (CA7) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"), cert. denied, 537 U.S. 949, 123 S. Ct. 414, 154 L. Ed. 2d 293 (2002); Ross v. County of Bernalillo, 365 F.3d 1181, 1185-1186 (CA10 2004) (same); Spruill v. Gillis, 372 F.3d 218, 230 (CA3 2004) (same); Johnson v. Meadows, 418 F.3d 1152, 1159 (CA11 2005) (same).

A prisoner's lack of knowledge regarding the existence of the procedure does not relieve his/her responsibility to exhaust administrative remedies, and failure of officials to provide grievance forms is not a legitimate defense. See Abney v. McGinnis, 380 F. 3d 663 (2nd Cir. 2004). So long as the prisoner has access to writing material and officials do not interfere with the procedure, the process must be followed to conclusion before suit is filed. Id.

As relevant to the case at bar, PHS has established a simple three-step procedure for identifying and addressing inmate grievances at Ventress Correctional Facility. (See Exhibit "B'). If an inmate has a grievance regarding a healthcare issue he must submit to the healthcare unit an "Inmate Request Slip." (Id.) These are standard forms that may be requested from an inmate's supervising officer in his dormitory. (Id.) The inmate request slip allows an inmate to communicate any healthcare related concern by placing the

request slip in the sick call box or mailbox to be forwarded to the healthcare unit. (Id.) Nettie Burks, R.N., H.S.A. subsequently reviews the request and responds to the inmate verbally. (Id.)

If an inmate is unsatisfied with my response, he may request an "Inmate Grievance" form from the healthcare unit. (Id.) This form allows an inmate to again voice his concerns relating to the healthcare issue addressed with the inmate request slip. (Id.) Nurse Burks again responds to the inmate verbally. (Id.)

If the inmate is still unsatisfied with my response, he or she may request from the healthcare unit an "Inmate Grievance Appeal" form. (Id.) This form is again submitted to Nurse Burks and represents the final step of the appeal process. (Id.) After an inmate submits an inmate grievance appeal, Nurse Burks will again meet with the inmate in a final attempt to address his concerns. (Id.)

Sidney Clayton alleges that PHS, Dr. Rayapati and Nurse Burks have failed to provide him with appropriate medical treatment by failing to transfer him to a facility where he would not be exposed to secondhand smoke and failing to properly maintain Ventress's sprinkler system. (Id.) However, Mr. Clayton has failed to exhaust Ventress's informal grievance procedure relating to these claims. (Id.) As such, the healthcare unit at Ventress has not been afforded an opportunity to attempt to resolve Mr. Clayton concerns prior to filing suit. (Id.)

Since Mr. Clayton has failed to extinguish those administrative remedies available for him at Ventress, the Prison Litigation Reform Act of 1995 (PLRA) demands that the Plaintiff's lawsuit be dismissed.

## V. CONCLUSION

The Plaintiff's Amended Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. The Defendants have demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material fact relating to a constitutional violation, and that they are, therefore, entitled to a judgment in their favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden. Moreover, since the Plaintiff failed to exhaust those administrative remedies available to him at Ventress prior to filing suit, this case is due to be dismissed pursuant to the PLRA.

Accordingly, the Defendants request that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment and that this Honorable Court either dismiss the Plaintiff's Amended Complaint, with prejudice, or enter a judgment in their favor.

Respectfully submitted this the 4th day of **December, 2006.**

s/L. Peyton Chapman, III
Alabama State Bar Number CHA060
s/R. Brett Garrett
Alabama State Bar Number GAR085
Attorneys for Prison Health Services,
Inc., Samuel Rayapati, M.D., and
Nettie Burks, R.N., H.S.A.

RUSHTON, STAKELY,
JOHNSTON & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 834-8480
Fax: (334) 262-6277
E-mail: bg@rsjg.com

## CERTIFICATE OF SERVICE

I hereby certified that I have mailed via U.S. mail, properly addressed and first-class postage prepaid, the foregoing document this 4th day of December, 2006, to the following:

Sidney James Clayton (AIS # 224797)
Red Eagle Honor Farm
1290 Red Eagle Road
Montgomery, AL 36110

                                              s/R. Brett Garrett
                                              Attorney for Prison Health Services,
                                              Inc., Samuel Rayapati, M.D., and
                                              Nettie Burks, R.N., H.S.A.